**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


EVA LOCKE et al.,

    Plaintiffs,

v.            CASE NO.  4:09cv193-RH/WCS

JOYCE SHORE et al.,

    Defendants.

_____/


## OPINION ON THE MERITS


  Under Florida law, a person must have a license in order to "practice"

*nonresidential* "interior design."  A person may provide *residential* interior design

services without a license but may not advertise or hold herself out as an "interior

designer."  The plaintiffs assert that "interior design," as defined by the governing

statute, includes many activities for which a state may not constitutionally require a

license, and that a state may not constitutionally ban truthful commercial speech

advertising a person's lawful "interior design" activities.  By agreement, the case is

under submission as if tried on the paper record.  This order upholds the properly-

construed ban on practicing nonresidential interior design without a license but

holds unconstitutional the ban on an unlicensed residential designer's truthful representation that she is an "interior designer."

## I. The Litigation

The plaintiffs Eva Locke, Patricia Anne Levenson, and Barbara Banderkolk Gardner are unrelated individuals with education and training in interior design. They have provided residential interior design services in Florida and wish to provide commercial interior design services. Each wishes to market herself as an "interior designer." The plaintiff National Federation of Independent Business is a national trade association and advocacy group with Florida members who at least arguably provide "interior design" services.

The defendants are members of the Florida Board of Architecture and Interior Design, the agency with authority to enforce the statutes at issue. The plaintiffs have sued the defendants in their official capacities. The defendants are represented by the Attorney General—the state's chief legal officer—who has the constitutional prerogative and duty to speak for the state. For ease of reference, this order often refers to the defendants' contentions as those of "the state."

The plaintiffs seek declaratory and injunctive relief under 42 U.S.C. § 1983 based on a variety of constitutional provisions: the First Amendment, the Equal Protection and Due Process Clauses, the Fourteenth Amendment's Privileges or

Immunities Clause, and the Commerce Clause.  The defendants have acknowledged the plaintiffs' standing to raise these claims and have joined issue on the merits.

The two sides filed and briefed cross-motions for summary judgment.  After oral argument, they agreed to have the case treated as fully tried on the merits based on the written record, including the declarations of the various witnesses. This order sets forth the court's findings of fact and conclusions of law and directs the entry of an appropriate judgment, just as would have occurred following a traditional trial with live witnesses.

## II.  The License Requirement

Florida, like most or all other states, licenses architects.  An applicant for a license must meet education and training requirements and must pass an examination.  There are some functions that only a licensed architect may perform. Certifying the plans for a typical commercial building is an example.  Licensing the architect helps ensure that a building will not fall down in ordinary use or even in a hurricane.

Florida, like only two other states, also licenses interior designers.  An applicant for a license must meet education and training requirements and must pass an examination.  The state asserts that recognizing interior design as a

profession separate from architecture reduces the regulatory burden in an important respect: services that can safely be provided and certified by a properly trained interior designer need not be performed or supervised by an architect. Thus an architect must design load-bearing walls to ensure that the building will not fall down, but a properly trained interior designer can locate a fixture in a manner that complies with accessibility codes. The state says recognizing this new category of licensed professional in the field of architecture and design is similar to the prior emergence of the physician's assistant and nurse practitioner in the medical field. And the state says the interior designer, like the physician's assistant or nurse practitioner, should be licensed in order to promote competence. It is an argument that a reasonable legislature might or might not accept and that most apparently have rejected. Still, accepting the argument is within the wide range of discretion that the Constitution affords a state legislature.

The plaintiffs say, though, that *this* statute is constitutionally deficient. They say the statute sweeps far too broadly, that it requires a license to perform ordinary tasks that nobody could rationally believe should be subject to licensing, and that it draws irrational distinctions. The plaintiffs say the statute thus violates the Due Process and Equal Protection Clauses. They say the statute regulates speech without a sufficient justification and thus violates the First Amendment. They say the statute is impermissibly overbroad and vague. And they say the statute violates

the Commerce Clause and Privileges or Immunities Clause because any risk to the

public from allowing an unlicensed person to practice nonresidential interior

design is insufficient to justify the statute's burden on interstate commerce and an

individual's right to pursue a livelihood. This order addresses each of these

contentions in turn.

### A. The Statute's Scope

The prohibition on practicing interior design without a license provides:

(1) A person may not knowingly:

. . .

(b) Practice interior design unless the person is a registered
interior designer unless otherwise exempted herein . . . .

§ 481.223, Fla. Stat.[1] A "registered interior designer" is one with a Florida license.

§ 481.203(9). The exemption of primary interest is for residential services: the

statute does "not apply" to a person "who performs interior design services . . . for

any residential application." § 481.229(6)(a). In short, a person may not

"practice" nonresidential "interior design" without a license. A violation of this

provision is a first-degree misdemeanor punishable by up to a year in custody. §

---

[1] This order's citations to the Florida Statutes are to the officially compiled
2008 version, unless otherwise noted.

481.223(2).

The statute defines "interior design" by saying first what the term "means," and then what it "includes":

> "Interior design" means designs, consultations, studies, drawings, specifications, and administration of design construction contracts *relating to nonstructural interior elements of a building or structure*. "Interior design" includes, but is not limited to, reflected ceiling plans, space planning, furnishings, and the fabrication of nonstructural elements within and surrounding interior spaces of buildings. "Interior design" specifically excludes the design of or the responsibility for architectural and engineering work, except for specification of fixtures and their location within interior spaces.

§ 481.203(8), Fla. Stat. (emphasis added).

The statute is not a model of clarity. Picking and choosing words from the definition, the plaintiffs say the statute prohibits a wedding planner from sketching a suggested layout of tables for a reception, because a sketch is a "drawing" and tables are "furnishings." The plaintiffs say the statute prohibits a college student in a design class from drawing a floor plan as a course assignment, because it is a "drawing" as part of a "study." The plaintiffs conjure additional examples that they say demonstrate the absurd reach of the statute. The state readily agrees that a statute of this breadth would be absurd. But the state says this statute does not go this far. The state has it right.

First, the definition itself prohibits nothing. It is simply a definition. The

substantive provision is § 481.223(1)(b), which prohibits the "practice" of nonresidential interior design by an unlicensed person. A wedding planner does not "practice" interior design by suggesting the layout of tables for a reception, and a student does not "practice" interior design by taking a class. Indeed, one Florida court has suggested that one does not "practice" architecture by preparing building plans, *even for a paying client*, on a single, "isolated" occasion. *See Gaisford v. Neuschatz*, 201 So. 2d 635, 636 (Fla. 4th DCA 1967) (construing the prior version of § 481.223). One need not go this far to recognize that to "practice" interior design means to provide services to a design client, with or without compensation. This is a substantial limitation on the statute's scope.

Second, the definition of "interior design," as set out in § 481.203(8), is not so broad as the plaintiffs claim. The first sentence says what the term "means." It means "designs, consultations, studies, drawings, specifications, and administration of design construction contracts *relating to nonstructural interior elements of a building or structure*." § 481.203(8), Fla. Stat. (emphasis added). That is the whole definition. The concluding phrase "relating to nonstructural interior elements of a building or structure" modifies each of the listed items. "Interior design" thus encompasses only items "relating to nonstructural interior elements of a building or structure." A fixture ordinarily is a "nonstructural interior element of a building or structure." A table or other piece of stand-alone

furniture ordinarily is not.

To be sure, the second sentence of § 481.203(8) lists items that the term "interior design" "includes." The term includes "reflected ceiling plans, space planning, furnishings, and the fabrication of nonstructural elements within and surrounding interior spaces of buildings." Properly understood, this is not a new or additional definition; it is simply a clarification or confirmation that the listed items are covered, so long as they come within the definition of the term as set out in the first sentence of § 481.203(8). Reflected ceiling plans, space planning, design services relating to furnishings, and design services relating to the fabrication of nonstructural elements thus are covered by the term "interior design" if and only if they "relat[e] to nonstructural interior elements of a building or structure." Suggesting where to put a stand-alone table—or any number of them—is not "interior design."

Reading the second sentence of § 481.203(8) more broadly would make no sense. Thus, for example, if the limitation to matters relating to nonstructural interior elements were ignored, or if a table or other stand-alone piece of furniture were deemed an "interior element," then the second sentence of § 481.203(8) would seem to say that interior design includes any "fabrication" of a table or other stand-alone piece of furniture. But nobody would contend that merely manufacturing a table or chair—without giving advice on who should buy it, where

they should put it, or how they should use it—is "interior design."

The state readily agrees with this limited reading of the "interior design" definition and indeed goes further. The state points to the statute's definition of a different term:

> "Interior decorator services" includes the selection or assistance in selection of surface materials, window treatments, wallcoverings, paint, floor coverings, surface-mounted lighting, surface-mounted fixtures, and loose furnishings not subject to regulation under applicable building codes.

§ 481.203(15). The state says that "interior design" and "interior decorator services" are mutually exclusive categories and that a person thus does not need a license to provide "interior decorator services," even in a nonresidential setting.

Just because the statute defines two different terms of course does not necessarily mean the terms are mutually exclusive. But here the definitions, on their own, are indeed mutually exclusive, or nearly so. The statute defines "interior design" to include only items "relating to nonstructural interior elements of a building or structure," and this ordinarily excludes the items listed in the definition of "interior decorator services."

This limited construction of the statute draws further support from the doctrine of constitutional avoidance. *See, e.g.*, *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 348, 56 S. Ct. 466, 80 L. Ed. 688 (1936) (Brandeis, J., concurring);

*see also Broadrick v. Oklahoma*, 413 U.S. 601, 618, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973) (adopting the state attorney general's limited construction of a statute to avoid constitutional difficulties). If the statute were construed as broadly as the plaintiffs say it should be, it would indeed raise substantial constitutional issues. The state has advocated the limited construction adopted by this order partly to obtain a favorable ruling in this case. As the state concedes, it will not be free in later cases to disavow the limited construction it has successfully advocated here. *See, e.g.*, *Stephens v. Tolbert*, 471 F.3d 1173, 1177 (11th Cir. 2006) (discussing judicial estoppel doctrine). The plaintiffs thus can justifiably rely on the ruling set out in this order without fear that the Florida Board of Architecture and Interior Design will revert to incorrect positions it has taken earlier—without the Attorney General's approval—in other investigations or prosecutions.

In sum, the statute prohibits an unlicensed person from providing design services to a client relating to nonstructural interior elements of a nonresidential building or structure. It sweeps no more broadly than that.

## B.  Due Process and Equal Protection

The Due Process and Equal Protection Clauses support only deferential review of economic regulations of this type. *See, e.g.*, *Williamson v. Lee Optical*, 348 U.S. 483, 487-89, 75 S. Ct. 461, 99 L. Ed. 563 (1955). A state need not prove

that its legislative judgments are correct; they need only have a rational basis. *Id.* at 488. A state of course may invest its own courts with the authority to review its own legislation under a stricter standard based on the state's own constitution, and one state court has struck down an interior-design licensing statute on this basis. *See State v. Lupo*, 984 So. 2d 395 (Ala. 2007). That does not, however, change the standards that apply under the United States Constitution.

Florida's ban on the unlicensed practice of nonresidential interior design, as properly construed, easily passes muster under the federal Constitution. This is so whether the ban is seen as one intended to protect public safety—for example, by ensuring that nonstructural interior elements do not violate fire or accessibility standards—or simply as one intended to protect consumers from incompetent or poorly trained interior designers. The legislative history suggests that both safety and consumer protection were factors in the legislature's initial foray into this area. *See* Fla. S. Comm. on Approp., CS for CS for SB 127 (1988) Staff Analysis 1-2 (May 18, 1988). And regardless of the legislature's actual motivation, it is sufficient to defeat the plaintiffs' Due Process and Equal Protection claims that the statute has a rational basis, that is, one that a reasonable legislature could have accepted.

This is so even though the legislature provided exceptions or drew lines that seem less than a perfect fit. Thus, for example, the plaintiffs question a recently

enacted exemption for a "manufacturer of commercial food service equipment" or

its representatives, subject to specific conditions. *See* Ch. 2009-195, § 24, Laws of

Fla. (to be codified at § 481.229(8), Fla. Stat. (2009)). The legislature may have

concluded that such a manufacturer could be relied upon to oversee the installation

of its equipment safely. In any event, a legislature need not treat businesses of all

types the same or equally ban all activities that present similar perceived harms; a

legislature may instead address "the phase of the problem which seems most acute

to the legislative mind." *Lee Optical*, 348 U.S. at 489. This and other lines drawn

by the statute do not invalidate it.

Licensing interior designers may or may not be sound policy, but federal

courts do not sit to review the wisdom of state laws or to prohibit state legislatures

from adopting laws that are unsound, unnecessary, or even silly, so long as they are

not unconstitutional.

## C. The First Amendment

In arguing for more exacting review, the plaintiffs invoke the First

Amendment. The plaintiffs correctly point out that restrictions on speech protected

by the First Amendment are subject to rigorous scrutiny. *See, e.g.*, *Ysursa v.*

*Pocatello Educ. Ass'n*, 129 S. Ct. 1093, 1098, 172 L. Ed. 2d 770 (2009). But

contrary to the plaintiffs' assertion, the provision requiring a license to practice

nonresidential interior design does not implicate this principle.

It is true of course that practicing interior design involves speech. An interior designer consults with the client and may prepare drawings or studies in the course of the work. This does not mean, however, that the ability to practice interior design without a license is protected by the First Amendment. If it were, then the laws regulating many professions—including law, medicine, and engineering—would be subject to heightened scrutiny under the First Amendment. They are not. As the Fourth Circuit aptly put it, a "[p]rofessional regulation is not invalid, nor is it subject to first amendment strict scrutiny, merely because it restricts some kinds of speech." *Accountant's Soc. of Va. v. Bowman*, 860 F.2d 602, 604 (4th Cir. 1988) (citing *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456-57, 98 S. Ct. 1912, 56 L. Ed. 2d 444 (1978)); *see also City of Dallas v. Stanglin*, 490 U.S. 19, 25, 109 S. Ct. 1591, 104 L. Ed. 2d 18 (1989) ("It is possible to find some kernel of expression in almost every activity a person undertakes . . . but such a kernel is not sufficient to bring the activity within the protection of the First Amendment."); *Lowe v. SEC*, 472 U.S. 181, 228, 105 S. Ct. 2557, 86 L. Ed. 2d 130 (1985) (White, J., concurring) ("The power of government to regulate the professions is not lost whenever the practice of a profession entails speech.").

Indeed, the Eleventh Circuit has said that a professional regulation does not implicate the First Amendment merely because it has the incidental effect of

restricting speech.  *See Wilson v. State Bar*, 132 F.3d 1422, 1430 (11th Cir. 1998);

*see also Lawline v. Am. Bar Ass'n*, 956 F.2d 1378, 1386 (7th Cir. 1992) (same);

*Bowman*, 860 F.2d at 604 ("A statute that governs the practice of an occupation is

not unconstitutional as an abridgment of the right to free speech, so long as 'any

inhibition of that right is merely the incidental effect of observing an otherwise

legitimate regulation.'") (quoting *Underhill Assoc. v. Bradshaw*, 674 F.2d 293, 296

(4th Cir.1982)).

Of course, a statute is not shielded from First Amendment scrutiny merely

because the state casts it as a "professional regulation."  *See Miller v. Stuart*, 117

F.3d 1376, 1382 (11th Cir. 1997).  Courts must independently ascertain the "point

where regulation of a profession leaves off and prohibitions on speech begin."

*Lowe*, 472 U.S. at 232 (White, J., concurring); *Bowman*, 860 F.2d at 604.  Justices

Jackson and White have provided sound guidance for drawing that distinction.

In *Thomas v. Collins*, 323 U.S. 516, 65 S. Ct. 315, 89 L. Ed. 430 (1945),

Justice Jackson said:

> [A] rough distinction [between a valid professional regulation and an
> impermissible restriction on speech] always exists, I think, which is
> more shortly illustrated than explained. A state may forbid one
> without its license to practice law as a vocation, but I think it could
> not stop an unlicensed person from making a speech about the rights
> of man or the rights of labor, or any other kind of right . . . .  Likewise,
> the state may prohibit the pursuit of medicine as an occupation
> without its license but I do not think it could make it a crime publicly

or privately to speak urging persons to follow or reject any school of
medical thought.

*Id.* at 544-45 (Jackson, J., concurring).  Building on Justice Jackson's statement,

Justice White later spoke for three justices:

> One who takes the affairs of a client personally in hand and purports
> to exercise judgment on behalf of the client in the light of the client's
> individual needs and circumstances is properly viewed as engaging in
> the practice of a profession. [In those situations,] the professional's
> speech is incidental to the conduct of the profession. If the
> government enacts generally applicable licensing provisions limiting
> the class of persons who may practice the profession, it cannot be said
> to have enacted a limitation on freedom of speech or the press subject
> to First Amendment scrutiny. Where the personal nexus between
> professional and client does not exist, and a speaker does not purport
> to be exercising judgment on behalf of any particular individual with
> whose circumstances he is directly acquainted, government regulation
> ceases to function as legitimate regulation of professional practice
> with only incidental impact on speech; it becomes regulation of
> speaking or publishing as such, subject to [First Amendment
> scrutiny].

*Lowe*, 472 U.S. at 232 (White, J., concurring) (footnote omitted); *see also*

*Bowman*, 860 F.2d at 604 (following *Lowe* concurrence); *Wilson*, 132 F.3d at

1430; *see generally* Robert Kry, *The "Watchman for Truth": Professional

Licencing and the First Amendment*, 23 Seattle U. L. Rev. 885 (2000).

These principles apply to the case at bar with unmistakable clarity.  An

interior designer plans the use of spaces and determines the location of fixtures in

light of the client's individual needs and goals.  An interior designer—like a lawyer, doctor, or engineer—exercises judgment on the client's behalf according to the client's particular needs and circumstances; there is a "personal nexus" between the interior designer and the client.  *Lowe*, 472 U.S. at 232 (White, J., concurring).  In short, the interior designer practices a profession as that term is used in *Thomas* and *Lowe*.  The Florida requirement for a license is a professional regulation, and its effect on speech is incidental.  The license requirement is not subject to First Amendment scrutiny.

### D.  Overbreadth and Vagueness

Because the licensing requirement does not restrict constitutionally protected speech, the plaintiffs' facial overbreadth and vagueness challenges can be dealt with quickly.

First, overbreadth is not a basis for invalidating a statute outside of the First Amendment context.  *See Schall v. Martin*, 467 U.S. 253, 268 & n.18, 104 S. Ct. 2403, 81 L. Ed. 2d 207 (1984); *Coleman v. DeWitt*, 282 F.3d 908, 914 (6th Cir. 2002).

Second, the Eleventh Circuit has said that "the void-for-vagueness doctrine [applies] outside of the First Amendment context only rarely."  *Am. Iron & Steel Inst. v. O.S.H.A.*, 182 F.3d 1261, 1277 (11th Cir. 1999).  A regulation "that does

not reach constitutionally protected conduct is not [facially] void for vagueness unless it is 'impermissibly vague in all of its applications.'" *Id.* (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982)); *High Ol' Times, Inc. v. Busbee*, 673 F.2d 1225, 1228 (11th Cir. 1982). Florida's licensing provision is not "impermissibly vague in all of its applications." *Hoffman Estates*, 455 U.S. at 499. For example, the statute itself makes clear that preparing specifications of "fixtures and their location within interior spaces" falls under the umbrella of interior design. § 481.203(8), Fla. Stat. The facial vagueness challenge is unfounded.

### E. The Commerce Clause

The plaintiffs next invoke a series of cases arising under the Commerce Clause. As the plaintiffs correctly note, the "dormant" Commerce Clause, by its own force, invalidates state statutes that unduly interfere with interstate commerce. *See Dennis v. Higgins*, 498 U.S. 439, 447, 111 S. Ct. 865, 112 L. Ed. 2d 969 (1991). Statutes that run afoul of this principle usually discriminate against out-of-state individuals or businesses, *see, e.g.*, *Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 100 S. Ct. 2009, 64 L. Ed. 2d 702 (1980), or interfere with the movement of goods or services in interstate commerce, *see, e.g.*, *Diamond Waste, Inc. v. Monroe County*, 939 F.2d 941 (11th Cir. 1991).

Indeed, it is far from clear that professional licensing regulations come within the purview of the dormant Commerce Clause at all. In *Brown v. Hovatter*, 561 F.3d 357 (4th Cir. 2009), the Fourth Circuit analyzed whether a Maryland statute that requires a license to practice mortuary science violates the dormant Commerce Clause. The court held it did not, and said that laws regulating locally performed, professional services do not even implicate the dormant Commerce Clause:

> [T]he plaintiffs are challenging the way Maryland authorizes them to do business within the State in a profession regulated by the State. Their complaints do not involve burdens placed on the interstate movement of goods, materials, or other articles of commerce, and the matters of which they complain—the manner of professional practice in Maryland—are not matters protected by the dormant Commerce Clause. As the Supreme Court stated in *Exxon* [*Corp. v. Governor of Md.*, 437 U.S. 117, 98 S. Ct. 2207, 57 L. Ed. 2d 91 (1978)], "We cannot . . . accept appellants' underlying notion that the Commerce Clause protects the particular structure or methods of operation in a retail market. . . . *[T]he Clause protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations.*" *Exxon*, 437 U.S. at 127-28, 98 S. Ct. 2207.

*Id.* at 365 (emphasis added).

*Brown* is instructive here. Like the practice of mortuary science, the practice of interior design often—but not always—begins and ends within a single state. And, like the Maryland statute, the Florida statute is a professional licensing law. It does not purport to regulate activity occurring outside of Florida, and it regulates

the provision of services, not the interstate flow of goods, materials, or other articles of commerce. It thus is doubtful that the Florida statute implicates the dormant Commerce Clause.

But even if the dormant Commerce Clause applies, the Florida statute does not violate it. Judicial review under the dormant Commerce Clause proceeds on two tiers of analysis. *See Bainbridge v. Turner*, 311 F.3d 1104, 1108-09 (11th Cir. 2002).

First, laws that discriminate against out-of-state residents are subject to exacting scrutiny and are rarely upheld. *See id.* (citing *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578-79, 106 S. Ct. 2080, 90 L. Ed. 2d 552 (1986)). This principle does not apply here because the Florida interior-design statute is not discriminatory. It treats all comers equally without regard to their citizenship or location. A Florida resident, like a resident of any other state or country, must have a license to practice nonresidential interior design in Florida. The requirement applies to an interior designer who lives and works next door to a project exactly as it applies to a designer who lives and works across the country. The criteria for obtaining a license are the same for a Florida resident as for a resident of any other state or country.

Second, a law that "regulates evenhandedly" is reviewed under the balancing test set out in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S. Ct. 844, 25 L. Ed. 2d

174 (1970). *Bainbridge*, 311 F.3d at 1109. Under that test, a state statute must be upheld so long as the burden it imposes on interstate commerce is not "clearly excessive" in relation to its putative local benefits. *Pike*, 397 U.S. at 142. *Pike*'s balancing test is deferential, and state statutes are rarely invalidated under it. *See Serv. Machine & Shipbuilding Corp. v. Edwards*, 617 F.2d 70, 75 (5th Cir. 1980); *see also* Brannon P. Denning, *Is the Dormant Commerce Clause Expendable?*, 77 Miss. L.J. 623, 624 (2007) (noting that *Pike*'s balancing test "has been used to invalidate very few statutes in the Supreme Court and does not have much bite in the lower courts either").

The Florida licensing statute is valid under *Pike*. The law promotes compliance with fire and accessibility codes, helps reduce indoor pollution, and protects consumers from incompetent interior designers. *See* Fla. S. Comm. on Approp., CS for CS for SB 127 (1988) Staff Analysis 1-2 (May 18, 1988) (citing evidence of the dangers posed by incompetent interior designers). And even if the statute burdens interstate commerce to a degree (which is not at all clear), the burden is not "clearly excessive" when compared to the legitimate local interests. The statute does not violate the dormant Commerce Clause.

## F. The Privileges or Immunities Clause

The Supreme Court has held that the Fourteenth Amendment's Privileges or

Immunities Clause protects a limited set of rights. *See Slaughterhouse Cases*, 83

(16 Wall.) 36, 21 L. Ed. 394 (1872); *Saenz v. Roe*, 526 U.S. 489, 119 S. Ct. 1518,

143 L. Ed. 2d 689 (1999). The right to engage in an occupation free from state

regulation is not one of them. *See Madden v. Kentucky*, 309 U.S. 83, 91, 60 S. Ct.

406, 84 L. Ed. 590 (1940); *see also Nebbia v. New York*, 291 U.S. 502, 527-28, 54

S. Ct. 505, 78 L. Ed. 940 (1934) ("The Constitution does not guarantee the

unrestricted privilege to engage in a business or to conduct it as one pleases.").

And even if the Privileges or Immunities Clause applied, it would not invalidate

this statute. The plaintiffs are not entitled to relief under the Privileges or

Immunities Clause.


## III.  The Advertising Restriction

Florida law allows a person to practice residential interior design without a

license. But the statute adds an important restriction: the person must "not

advertise as, or represent himself or herself as, an interior designer."

§ 481.229(6)(a), Fla. Stat. A separate provision, too, makes it a misdemeanor for

an unlicensed person to "[u]se the name or title . . . 'interior designer' or

'registered interior designer,' or words to that effect." § 481.223(1)(c). The

plaintiffs assert that even if the restrictions on practicing interior design without a

license are valid, the ban on using the term "interior designer"—or words to that

effect—is not.

The First Amendment protects commercial speech that is truthful and not misleading. *See Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 564, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980); *This That & Other Gift and Tobacco, Inc. v. Cobb County, Ga.*, 285 F.3d 1319, 1323 (11th Cir. 2002). Advertising one's profession is commercial speech governed by this principle. *See Miller v. Stuart*, 117 F.3d 1376, 1382 (11th Cir. 1997) (holding that advertising oneself as a "certified public accountant" is commercial speech). Commercial speech that concerns lawful activity and is not misleading "may still be restricted, but only where the asserted governmental interest is substantial, the regulation directly advances that interest, and the regulation is no more extensive than necessary to serve that interest." *This That & Other Gift*, 285 F.3d at 1323; *see also Borgner v. Brooks*, 284 F.3d 1204, 1210-13 (11th Cir. 2002).

"[T]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Edenfield v. Fane*, 507 U.S. 761, 770, 113 S. Ct. 1792, 123 L. Ed. 2d 543 (1993) (internal quotations omitted). "This burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Id.* at 770-71.

The state's only argument in support of § 481.229(6)(a) is that it is misleading for a residential interior designer to call herself an "interior designer." Not so. A person who trains dogs is a dog trainer, even if she trains only poodles. A person who grows apples is an apple grower, even if she grows only Granny Smiths. And a person who provides interior-design services is an interior designer, even if she works only on residences. There is nothing misleading about a Florida residential interior designer calling herself an "interior designer."

The state says, though, that under the Florida statute, an "interior designer" is a person with a license who can lawfully provide interior design services for both residential and nonresidential applications. The statute does indeed define "interior designer" in this way. § 481.203(9), Fla. Stat. But that does not make it misleading for an unlicensed residential interior designer to call herself an "interior designer." *See Abramson v. Gonzalez*, 949 F.2d 1567, 1576 (11th Cir. 1992) (holding that it is not misleading for an unlicensed person who lawfully practices psychology to refer to herself as a "psychologist," even though a state statute defines "psychologist" as someone with a license); *see also Byrum v. Landreth*, 566 F.3d 442, 446-48 (5th Cir. 2009) (holding that it is not misleading for an unlicensed person who lawfully practices interior design to call herself an "interior designer," even though a statute defines "interior designer" as someone with a license); *Roberts v. Farrell*, 630 F. Supp. 2d 242 (D. Conn. 2009) (same).

*Roberts* explained it this way:

> [A]dopting the [state's] position [that an unlicensed person's use of
> the title "interior designer" is misleading simply because the statute
> defines "interior designer" as someone with a license] would
> eviscerate the First Amendment's protection of commercial
> speech[.  It would make] the determination of what is "misleading"
> dependent upon the parameters of the challenged restriction. . . . There
> is a circularity to the [state's] reasoning that condemns it—the State
> defines "interior designer" as someone who registers and anyone who
> calls herself an interior designer without registering necessarily is
> misleading the public and cannot challenge the law because her
> speech is misleading. By this logic, a state would always be insulated
> from any constitutional challenge to a commercial speech restriction
> . . . . The term "interior designer" is not a term of art and it is not
> inherently misleading. It merely describes a person's trade or
> business.

630 F. Supp. 2d at 249 (citing *Abramson*); *see also Byrum*, 566 F.3d at 446-48.

The same reasoning applies here.  It is not misleading for an unlicensed

person who lawfully practices residential interior design to refer to herself  as an

"interior designer," regardless of how the statute defines the term.  Surely few if

any prospective customers know the state definition of "interior designer."  Surely

few customers or other members of the public use the term "interior design" in the

restricted way it is defined in the statute, and few know that to provide

nonresidential "interior design" services in Florida, one must have a license.  A

prospective customer seeing an advertisement for an "interior designer" thus would

not understand this as a representation that the advertiser is licensed or can provide

nonresidential as well as residential services. Moreover, even if a customer was sophisticated enough to know the technical definition of "interior design" and to know that nonresidential interior design work requires a license, and even if the customer cared, the customer presumably would look for a representation that the advertiser was licensed, or simply ask. The notion that such a person would read the words "interior designer," and understand this as a representation that the advertiser was licensed, is a stretch. *See Peel v. Attorney Registration and Disciplinary Comm'n.*, 496 U.S. 91, 105, 110 S. Ct. 2281, 110 L. Ed. 2d 83 (1990) (plurality opinion).

This is not the stuff of valid restrictions on protected speech. The state's suggestion that a customer will be misled by an unlicensed person's use of the term "interior designer" is based on "mere speculation or conjecture"; the state has not shown "that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield*, 507 U.S. at 770. The ban on the use of the term "interior designer" to describe a person's lawful services violates the First Amendment.

A final word on this subject is in order. The state suggests that the statute imposes only an insubstantial burden because an unlicensed person can simply describe herself as a "residential interior designer," thus avoiding any risk that the public will be misled. The statute prohibits a person from using the "name or title"

"interior designer" or "words to that effect."  481.223(1)(c), Fla. Stat.  At least on its face, calling oneself a "residential interior designer" would appear to violate the statute.  And either way, the state cannot prohibit a person from describing her lawful services using words of her own selection, so long as they are true and not misleading.  In an age when the choice of language may determine the hits produced by computerized search engines, a ban on using the most popular term ordinarily used to describe a person's lawful work imposes a burden that is not inconsequential.

## IV.  Conclusion

The Florida statute requiring a person to obtain a license in order to provide *nonresidential* "interior design" services—as that term is properly construed—is constitutional.  But the statute barring a person who provides lawful *residential* interior-design services without a license from advertising herself as an "interior designer" violates the First Amendment.  Accordingly,

IT IS ORDERED:

1.  It is declared that § 481.223(1)(b) is constitutional.

2.  It is declared that § 481.223(1)(c) and the proviso in § 481.229(6)(a) prohibiting advertising or representing oneself as an interior designer are unconstitutional.

3.  The defendants must not enforce or attempt to enforce § 481.223(1)(c) or the proviso in § 481.229(6)(a) against the plaintiffs Eva Locke, Patricia Anne Levenson, or Barbara Banderkolk Gardner, or against any person or entity who is now a member of the plaintiff National Federation of Independent Business.  This injunction is binding on the defendants and their officers, agents, servants, employees, and attorneys, and on those persons in active concert or participation with them who receive actual notice of this injunction by personal service or otherwise.

4.  The clerk must enter judgment setting out the declarations and injunction in paragraphs 1, 2, and 3, and dismissing any other claims.

5.  The clerk must close the file.

SO ORDERED on February 4, 2010.

s/Robert L. Hinkle
United States District Judge